THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE 
 CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 
 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
The State,       
Respondent,
 
 
 

v.

 
 
 
Thomas Mark Tucker,       
Appellant.
 
 
 

Appeal From Greenville County
Edward W. Miller, Circuit Court Judge

Unpublished Opinion No. 2004-UP-566
Submitted November 1, 2004  Filed November 
 15, 2004

AFFIRMED

 
 
 
Jeffrey Falkner Wilkes, of Greenville, for Appellant.
Attorney General Henry Dargan McMaster, Chief Deputy 
 Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley 
 W. Elliott, and Assistant Attorney General David Spencer, all of Columbia; and 
 Solicitor Robert M. Ariail, of Greenville, for Respondent.
 
 
 

PER CURIAM:  Thomas Mark Tucker (Tucker) 
 appeals his conviction following a guilty plea.  He argues that at the plea 
 hearing he maintained he acted in self-defense, and, therefore, the trial court 
 should not have entered a plea of guilty.  We affirm. [1] 
FACTS
Tucker was indicted by a Greenville 
 County grand jury for criminal domestic violence of a high and aggravated nature.  
 On September 27, 2002, Tucker struck his live-in girlfriend, Christy Rocket 
 (Rocket), several times with his fist.  She suffered facial fractures because 
 of the incident and was taken to a hospital in an ambulance where she underwent 
 emergency surgery.   
On July 10, 2003, Tucker appeared before the trial 
 court and was represented by his attorney, Mr. Paschal.  The following colloquy 
 took place between Tucker and the court: 

THE COURT:  Now, thatand I understand you want to tender 
 a plea to criminal domestic violence of a high and aggravated nature, and that 
 carries up to ten years in prison.
Do you understand that?
DEFENDANT TUCKER:  Yes, sir.
THE COURT:  All right.  Understanding the nature of the 
 charges against you and the maximum possible punishment, how do you wish to 
 plead?
DEFENDANT TUCKER:  Guilty.
THE COURT:  Now, has anybody forced you, coerced you, threatened 
 you, or promised you anything in any way to get you to enter a plea of guilty?
DEFENDANT TUCKER:  No, sir. 
THE COURT:  And are you doing it freely 
 and voluntarily?
DEFENDANT TUCKER: Yes, sir.
THE COURT:  Okay.  Do you understand that you have an absolute 
 right to a trial by jury where you would be presumed innocent unless and until 
 the Government could prove you guilty beyond any reasonable doubt of each and 
 every element of the offense that youre charged with?  
DEFENDANT TUCKER:  Yes, sir.
THE COURT:  You have a right to confront and cross-examine 
 the witnesses and the evidence against you.  Youd have a right to compel in 
 court all relevant and competent evidence in your defense, or you could remain 
 silent and your silence cannot be held against you.  You can never be compelled 
 to incriminate yourself in a court of law in this country.
Do you understand all of those 
 rights?
DEFENDANT TUCKER:  Yes, sir.
THE COURT:  Do you want to waive and give up those rights 
 and plead guilty?
DEFENDANT TUCKER:  Yes, sir.
THE COURT:  Are you guilty?
DEFENDANT TUCKER:  Uh, yes, sir. 

The State recited the facts of the case, 
 alleging that Rocket was Tuckers live-in girlfriend and describing the altercation 
 that led to Tuckers indictment.  The following exchange then took place:

THE COURT:  All right.  Mr. Tucker, 
 youve heard the recitation of the facts that the State believes they could 
 prove at trial.
I want to ask you if you agree 
 or disagree with that?
DEFENDANT TUCKER:  I dont fully agree, 
 no, sir.
THE COURT:  All right.  If you would, tell me your version 
 of the facts.
DEFENDANT TUCKER:  I wasnt really living with her.  The reason 
 we had the fuss to start with is I was going home that night.  She didnt want 
 me to leave, chased me out to the car, and even going to the extent of getting 
 on the hood of the car so I couldnt leave, took my keys from me.
I went back in the house with her trying to get my keys back.  
 It turned into an argument and ended up in the bedroom arguing over trying to 
 get the keys back still.  All this, you know, to go home.  
And then the only reason I hit her is she hit me three times 
 with an iron that was plugged up first.
THE COURT:  Im sorry.  Hit you three times with an iron?  
 I didnt hear that. 
DEFENDANT TUCKER:  Yeah, three times.  It was plugged up.  
 The first time was in the elbow, and then once around my forearm, Ive got a 
 scar there still, and once on the side of the head.   
And, at that point, thats when I justactually, when I hit, 
 I had my eyes shut and everything.  I just swung to get her off of me.  I dont 
 recall her being unconscious at all.  I looked at her.  I said, Are you okay?  
 I said, Im sorry.
I took her to the bathroom and got a towel.  There was no 
 blood in the bedroom.  I actually called 911 for her.  I went with her to the 
 hospital.  I stayed there all night with her until 7:00 that morning.  

The court next addressed Tuckers claim 
 that he was not living with Rocket when the incident took place.  

THE COURT:  This is a guilty plea.
DEFENDANT TUCKER:  Right.
THE COURT:  And one of theand, as I told you, the State has 
 got to prove beyond a reasonable doubt each of the elements of the offense that 
 youre charged with.
DEFENDANT TUCKER:  Right.
THE COURT:  And that is an essential element of the charge.  
 So if it is your position that you are not a household member with the alleged 
 victim in this case, then Im not going to accept your guilty plea.
If you dont feel that you were living there, then this is 
 not criminal domestic violence.
DEFENDANT TUCKER:  Well, all Imthe whole story is she came 
 down fromshe lived in North Carolina.  She came down.  She stayed at our house, 
 my parents.  I live at home still now.  She stayed with my parents until she 
 could find a place to live. 
My dad actually helped her find that house.  It was a friend 
 of his that rented it.  And I had even told her, I was like, you know, I said, 
 Ill help you some with money, whatever.  And I had stayed there some, but not 
 to the point of living there.  I lived at home.  Workif I had to go to work 
 the next day, I would go home.
MR. PASCHAL:  But you had clothes and 
  
DEFENDANT TUCKER:  I had a few clothes there.  I would change 
 sometimes when I went there after work.  But to say I lived there is not fully 
 true.  
 . . . . 
THE COURT:  But you have described what might be construed 
 as a self-defense argument.  And I want to tell you that if you enter this guilty 
 plea and I accept it, that whatever defenses you may have, you waive and give 
 up the right to present those.  That doesnt say you cant present that information 
 as mitigation.
But just so you understand that if you have any question 
 as to thewhether or not you have a defense in this matter, if you plead and 
 I accept it, you give up your right to use that defense.  
Do you understand that?
DEFENDANT TUCKER:  Right.  

Subsequently, Tucker admitted that at times he 
 stayed with his parents while at other times he stayed with Rocket.  After finding 
 that he was, in fact, a household member, the court addressed the possibility 
 of a self-defense claim:

THE COURT:  How about the self-defense, 
 Mr. Paschal?
MR. PASCHAL:  Your Honor, I think you asked him about that 
 and I think he realizes that, but hes not saying that hes
THE COURT:  All right.  Well, Ill accept the plea as being 
 knowingly, intelligently, and voluntarily made with the advice of a very competent 
 attorney with whom he states hes well satisfied, and there is a factual basis 
 for the plea. 

On appeal, Tucker argues (1) the trial 
 court should not have entered a guilty plea because Tucker maintained that he 
 acted in self-defense, and (2) the court failed to conduct a sufficient inquiry 
 under. North Carolina v. Alford, 400 U.S. 25 (1970).  
LAW/ANALYSIS
I.  Self-Defense
First, Tucker argues the trial court erred 
 in accepting his plea because he maintained that he acted in self-defense.  
 We disagree.  
Initially, this allegation is not properly before 
 this Court on direct appeal since the alleged error was not raised below.  In 
 the Interest of Antonio H., 324 S.C. 120, 477 S.E.2d 713 (1996) (proper 
 avenue in which to challenge guilty plea which is not objected to at time of 
 its entry is through post-conviction relief); State v. Williams, 303 
 S.C. 410, 401 S.E.2d 168 (1991) (defendant must object at first opportunity 
 to preserve issue for appellate review; alleged error must be raised to and 
 ruled on by trial judge); State v. McKinney, 278 S.C. 107, 292 S.E.2d 
 598 (1982) (absent timely objection at plea proceeding, unknowing and involuntary 
 nature of guilty plea can be attacked only through more appropriate channel 
 of post-conviction relief).
Moreover, as to the merits, we disagree with Tuckers 
 claim that he did not admit culpability.  The trial court thoroughly informed 
 Tucker of his various constitutional rights.  Tucker indicated he understood 
 his rights and that he wanted to give up those rights and plead guilty:

THE COURT:  Do you want to waive and give up those rights 
 and plead guilty?
DEFENDANT TUCKER:  Yes, sir. 
THE COURT:  Are you guilty?
DEFENDANT TUCKER:  Uh, yes, sir.  

If Tucker felt that he was not guilty, or that he 
 wanted to assert a defense, he should not have admitted guilt, and he should 
 not have entered a guilty plea.  
Further, the trial court specifically stated that 
 you have described what might be construed as a self-defense argument and 
 informed Tucker that by pleading guilty, he waived any defenses that he may 
 have had.  Again, Tucker indicated that he understood.  Consequently, we are 
 convinced that Tucker entered a plea of guilty and waived any potential claim 
 of self-defense.  See State v. Thomason, 341 S.C. 524, 534 S.E.2d 
 708 (Ct. App. 2000) (finding a guilty plea admits all elements of the offense 
 charged, leaves open for review only the sufficiency of the indictment, and 
 waives all other defenses).
II.  North Carolina v. Alford
Next, Tucker argues that due to the absence 
 of an admission of culpability, the court failed to conduct sufficient inquiry 
 under North Carolina v. Alford, 400 U.S. 25 (1970).  We disagree.
As with the self-defense argument, this argument 
 is not properly before this Court because Tucker did not raise an objection 
 at the plea hearing.  In the Interest of Antonio H., 324 S.C. 120, 477 
 S.E.2d 713 (1996) (proper avenue in which to challenge guilty plea which is 
 not objected to at time of its entry is through post-conviction relief); State 
 v. Williams, 303 S.C. 410, 401 S.E.2d 168 (1991) (defendant must object 
 at first opportunity to preserve issue for appellate review; alleged error must 
 be raised to and ruled on by trial judge); State v. McKinney, 278 S.C. 
 107, 292 S.E.2d 598 (1982) (absent timely objection at plea proceeding, unknowing 
 and involuntary nature of guilty plea can be attacked only through more appropriate 
 channel of post-conviction relief).
Nonetheless, we find this argument without merit.  
 Tucker did admit culpability, and he entered a guilty plea.  Therefore, the 
 court had no reason to alternatively accept the plea under Alford; that 
 case has no application here.  
CONCLUSION
Based on the foregoing, the decision of the circuit 
 court is 
AFFIRMED.
ANDERSON, STILWELL, and SHORT, JJ., concur. 
 

 
 
 [1] We decide this case without oral argument pursuant to Rule 215, SCACR.